UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REBECCA COELHO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 05-10703-RWZ |
| | ) |
| WAL-MART STORES, INC., | ) |
| CHAD GAUCHER, | ) |
| RUDI ECKERMAN, | ) |
| WARREN "BODIE" MOORE, and | ) |
| KEVIN CORREIA, | ) |
| | ) |
| Defendants. | ) |

## JOINT PRE-TRIAL MEMORANDUM

**1.   Concise Summary of the Evidence that will be Offered by the Plaintiff and Defendants with Respect to Liability and Damages.**

   **A. Ms. Coelho's Summary of Evidence**

   Ms. Coelho anticipates offering the following evidence at trial:

   Ms. Coelho commenced her Wal-Mart employment on or about July 14, 2003. Ms. Coelho did not receive any specific instruction or training regarding workplace harassment other then a short computer-based general training session during her Wal-Mart orientation. Ms. Coelho was never provided with a copy of Wal-Mart's sexual harassment policy.

   In September 2003, a young Sales Associate named Kevin Correia ("Mr. Correia") embarked on a disturbing campaign of sexual misconduct toward Ms. Coelho. Mr. Correia often stalked Ms. Coelho around the store; interrupting her while she attempted to perform her duties in order to make known his romantic desires. Mr. Correia also often called out to Ms. Coelho in a loud, intrusive manner and made inappropriate comments of a sexual nature to Ms. Coelho.

Mr. Correia frequently professed his affection for Ms. Coelho. Mr. Correia's comments were made within earshot of customers and other Wal-Mart employees and managers.

Mr. Correia also frequently attempted to hug Ms. Coelho and would block her pathway unless she provided him with a hug. Ms. Coelho attempted to deflect this inappropriate conduct by informing Mr. Correia that his conduct made her uncomfortable, as she was "not a hugging person." She also informed Mr. Correia that his pursuit of her and comments toward and/or about her were unwelcome. Despite the rebuke, Mr. Correia's behavior became more persistent. Mr. Correia began to pursue Ms. Coelho about the store requesting that she go on dates with him.

In late October, Ms. Coelho informed Wal-Mart's District Manager, Rudi Eckerman, that Mr. Correia was "aggressively pursuing" her both physically and verbally. Mr. Eckerman informed Ms. Coelho that he would meet with Mr. Correia and "take care of" the situation.

Despite Wal-Mart transferring Ms. Coelho to another department and Mr. Eckerman's assurances that he would "take care" of the situation, Mr. Correia's inappropriate behavior of a sexual nature continued unabated. At one point, Mr. Correia informed Ms. Coelho that Mr. Eckerman had informed him that he was free to try to hug Ms. Coelho if it was welcome. Mr. Correia also sexually harassed other female Wal-Mart employees with management's knowledge.

In December 2003, following another instance of Mr. Correia's harassment, Ms. Coelho again complained to management about Mr. Correia's behavior. She verbally complained to Wal-Mart's Human Resources Manager and attempted to file a written complaint with him regarding Mr. Correia's sexual harassment. Wal-Mart's Human Resources Manager – who was responsible for the proper training of Wal-Mart employees regarding sexual harassment issues -- refused to accept her complaint and turned her away. She initially complained to Mr. Gaucher

who dismissed Ms. Coelho's concerns. Mr. Moore then met with Ms. Coelho. Mr. Moore stated that he believe Ms. Coelho was "leading [Mr. Correia] on" and told her to accept responsibility for her part in the issues between she and Mr. Correia. Mr. Moore continued to berate and humiliate Ms. Coelho until she resigned.

In the wake of Wal-Mart's mistreatment, Ms. Coelho suffered severe emotional distress. Ms. Coelho has experienced nightmares and panic attacks and exacerbation of medical conditions. She has been hampered in her search for employment by her mental state. She has, at times, been unable to care for her child and has, instead, relied upon other family members for assistance.

**B. The Defendants' Summary of Evidence**

Defendants' evidence will demonstrate that Plaintiff, Rebecca Coelho, was employed with Wal-Mart Stores, Inc. as a Sales Associate at its Falmouth, Massachusetts store from July 14, 2003 to December 11, 2003, when she voluntarily resigned. Defendants' evidence also will show that although Ms. Coelho was in her late twenties when she was hired, she was very immature and had to be moved from department to department because whenever female associates gave her constructive criticism or directed her to perform her job duties, Ms. Coelho complained that they were being "mean" to her, "picking on her," or did not "like" her.

Defendants' evidence will show that Ms. Coelho received sexual harassment training and was aware of Defendants' Open Door policy and how to complain about sexual harassment. Defendants' evidence will demonstrate that she in fact used the Open Door Policy.

In fact, Defendants' evidence will demonstrate that in October 2003 when Ms. Coelho complained to the District Manager, Defendant Rudy Eckerman, that she believed her supervisor was "picking on her" and her co-workers were "mean" to her, Mr. Eckerman and the Store

3

Manager, Defendant Warren Bodie Moore, immediately arranged for Ms. Coelho to be transferred once again and this time to the Store's best Department Manager, Crystal Gilbert, who was very experienced. The evidence will show that Ms. Coelho was informed that this would be her final move as there were no departments remaining to which she could be reassigned. Defendants' evidence will further show that Mr. Eckerman and Mr. Moore were confident that if Ms. Gilbert could not help Ms. Coelho succeed in her employment, no one would be able to do so, and Wal-Mart would be forced to end her employment.

Defendants' evidence additionally will show that Ms. Coelho also complained to Mr. Eckerman in October 2003 that two male co-workers, Jason Lunn a Sporting Goods Associate and Kevin Correia an Electronics Associate, had asked her for hugs and that although she had not told them that she did *not* wish to hug them and in fact hugged them, she expressed concern to Mr. Eckerman that her husband, from whom she was separated at the time, would find out she had hugged the two Associates. The evidence will show that Mr. Eckerman told Ms. Coelho that he would have the situation addressed and that she should let him know if the hugging continued. The evidence will further show that on the following day, Mr. Eckerman instructed Mr. Moore to inform all male associates that hugging was not appropriate in the workplace; that Mr. Moore complied with that request; and that Mr. Eckerman received no further complaints from Ms. Coelho.

The Defendants' evidence will demonstrate that once in her new department, Ms. Coelho continued to appear to not want to work and, instead, was observed roaming the Store and chatting with male associates, which is something she had been spoken to about many times before. The evidence will further show that Ms. Coelho frequently spent time that she should

have been working talking to the two male associates whom she had complained about to Mr. Eckerman and that she often arranged breaks to be taken with one or both of them.

The Defendants' evidence will further demonstrate that on December 7, 2003, Ms. Coelho and Mr. Correia got into an argument over Ms. Coelho's refusal to assist in determining a price of an item and that argument ultimately led to her voluntary resignation from employment on December 11, 2003. Indeed, Defendants' evidence will show that the arguments resulted in Ms. Coelho accusing Mr. Correia of being "in love" with her and having harassed her for several months *prior* to December 7, 2003. The Defendants' evidence will further demonstrate that Ms. Coelho spontaneously resigned from employment during the investigation into her allegations about Mr. Correia. The evidence will prove that Mr. Moore told her that both she and Mr. Correia were responsible for the arguments that had occurred on December 7th, and due to her inability to handle criticism, which had been a clear pattern of hers, resigned in a "tantrum." The evidence will further demonstrate that after her separation from employment, Ms. Coelho, who has never held a full-time job or a regular position for more than a few months at one time, did not make sufficient efforts to mitigate her damages, chose not to work at all and has had stressful events in her life, including a divorce.

**2.      Statement of Facts Established by Pleadings, Admissions or Stipulations**

1. Ms. Coelho is an adult Massachusetts resident.

2. Wal-Mart Stores, Inc. is a Delaware corporation headquartered at 702 S.W. 8th Street, Bentonville, AR 72716.

3. Ms. Coelho was employed by Wal-Mart Stores, Inc. as a Sales Associate from July 14, 2003 through December 11, 2003.

4. Kevin Correia was employed by Wal-Mart Stores, Inc. as a Sales Associate from August 13, 2003 through May 25, 2004.

5. Ms. Coelho and Mr. Correia worked at the Wal-Mart Stores, Inc. location at 137 Teaticket Highway, East Falmouth, Massachusetts (Store #: 3561) from August 13, 2003 through December 11, 2003.

6. Ms. Coelho complained to defendant Rudi Eckerman that Kevin Correia was asking her for hugs on or about October 29, 2003.

7. Ms. Coelho was transferred to a different department.

8. At least one other employee complained to a Wal-Mart supervisor regarding Mr. Correia's inappropriate behavior toward female employees.

9. Ms. Coelho and Mr. Correia were involved in an argument on December 7, 2003.

10. Ms. Coelho complained to Warren "Bodie" Moore about the argument and his inappropriate sexual behavior. Mr. Moore told Ms. Coelho that an investigation revealed that she and her co-worker had been involved in an argument.

11. Wal-Mart's Human Resources Manager was responsible, in part, for properly training Wal-Mart employees regarding sexual harassment.

12. On December 11, 2003, Mr. Moore met with Ms. Coelho in his office.

13. Ms. Coelho became upset during the meeting.

14. Ms. Coelho removed her badge and stated that she "quit."

15. Neither Rudi Eckerman, nor any other Wal-Mart manager, contacted Ms. Coelho after December 11, 2003.

16. Mr. Correia was terminated from Wal-Mart on or about May 25, 2004 for allowing his brother to use his employee discount card.

**3.     Contested Issues of Fact**

   **A.  Ms. Coelho's Contested Issues of Fact**

   Ms. Coelho believes the following to be the general contested issues of fact.

   1.      Was Mr. Correia's sexual harassment of Ms. Coelho pervasive? Plaintiff contends that Mr. Correia often interrupted Ms. Coelho while she performed her job duties to tell her he loved her and made inappropriate sexual comments to her. He told Ms. Coelho that her "ass has gotten chunky" and asked whether she was wearing thong underwear. Mr. Correia also disrupted Ms. Coelho's work by blocking her path to other locations within the store. He also informed Ms. Coelho, and Wal-Mart customers, that he intended to marry Ms. Coelho and attempted to hug Ms. Coelho on numerous occasions.

6

2. Did Ms. Coelho report Mr. Correia's behavior to management? Plaintiff asserts that Ms. Coelho formally reported to management that Mr. Correia was sexually harassing her in October 2003. Prior to and subsequent to October 2003, Wal-Mart management personnel were aware of Mr. Correia's harassing behavior. They witnessed said behavior when they managed by "walking around the store." They also had constructive knowledge of the harassment as Mr. Correia sexually harassed other Wal-Mart employees in addition to Ms. Coelho. Mr. Correia slapped Andrea Duprey's rear end and bit her arm. Ms. Duprey complained to Chad Gaucher after each instance, but the harassment continued. Ginette Haley, a manager at the East Falmouth Wal-Mart store, alleged that Mr. Correia would profess his love for her. When Mr. Correia's harassment continued unabated, Ms. Duprey and David Eckert drafted a complaint to submit to management requesting Mr. Correia's termination. Other employees signed the complaint. No action was taken on the issues raised in the complaint.

3. Did Wal-Mart sufficiently train employees regarding harassment? The extent of training for employees and most management personnel was one computer-based learning ("CBL") lesson/exam mixed in with a day full of numerous other CBLs.

4. Did Wal-Mart fail to take proper investigative and remedial action after Ms. Coelho filed her first and subsequent complaints? Following Ms. Coelho's first sexual harassment complaint lodged against Mr. Correia in October 2003, Wal-Mart claims to have counseled Mr. Correia but utterly failed to follow-up in any meaningful way with either Ms. Coelho or Mr. Correia. Following the instance of harassment on December 7, 2003, Ms. Coelho reported Mr. Correia's behavior to Defendant Chad Gaucher. Ms. Coelho also reported Mr. Correia's behavior to another manager, Bruce Varney. Mr. Gaucher stated he would handle the situation. The following day, Mr. Gaucher promoted Mr. Correia from a temporary to a permanent employee. There is no mention of Ms. Coelho's complaints about Mr. Correia in his personnel file, despite statements from multiple employees in Ms. Coelho's personnel file.

5. Did Ms. Coelho's attempt to verbally complain to Wal-Mart's Human Resources Manager regarding Mr. Correia's behavior and attempted to file a written complaint with him regarding Mr. Correia's sexual harassment put Wal-Mart on notice of Mr. Correia's harassment? Wal-Mart's Human Resources Manager – who was responsible for the proper training of Wal-Mart employees regarding sexual harassment issues -- refused to accept her complaint and turned her away. Plaintiff contends that this complaint alone provided Wal-Mart with constructive or actual additional knowledge of Mr. Correia's illegal acts.

6. Did Ms. Coelho's complaint to Mr. Moore on December 10, 2003 about Mr. Correia's harassing behavior provide adequate notice and did Wal-Mart take appropriate action? On December 11, 2003, Mr. Moore arranged a meeting with Ms. Coelho, Ms. Haley and Ms. Gilbert in his office. Ms. Coelho was reasonably under the assumption that the meeting was to discuss Mr. Correia's behavior. Instead, Mr. Moore brought up purported issues regarding Ms. Coelho's job performance. When Ms. Coelho attempted to discuss her issues with Mr. Correia, Mr. Moore demanded that Ms. Coelho take responsibility for Mr. Correia's behavior contending that Ms. Coelho was "leading him on."

7

      7.     Was Ms. Coelho constructively discharged?  Ms. Coelho contends that no reasonable person in her position would have remained in Wal-Mart's employ after enduring the humiliation of Mr. Moore's suggestions.

      8.     Did Wal-Mart retaliate against Ms. Coelho for complaining about Mr. Correia's misconduct?

      9.     What was the severity of Ms. Coehlo's economic and emotional damages caused by Wal-Mart's actions.

      10.    Should the jury assess punitive damages against Wal-Mart for its actions?

    **B.  Wal-Mart's Contested Issues of Fact**

a.)     Did Mr. Correia sexually harass Ms. Coelho?

b.)     Did the Defendant(s) know or should they have known that Mr. Corriea sexually harassed Ms. Coelho?

c.)     Did Defendant(s) fail to take prompt remedial action?

d.)  Did Plaintiff unreasonably fail to take advantage of any preventative or corrective opportunities to avoid harm?

e.)  Did the Defendant(s) exercise reasonable care to prevent and promptly correct any sexually harassing behavior?

f.)   Did the Defendant(s) retaliate against Ms. Coelho for having engaged in protected activity?

g.)  Was Ms. Coelho constructively discharged?

h.)  Did Ms. Coelho suffer emotional distress as a direct result of Defendants' actions?

i.)  Did Ms. Coelho make sufficient efforts to mitigate her damages?

**4.**     **Jurisdictional Questions**

The parties agree that this matter is before this Court on federal question jurisdiction and that there are no jurisdictional questions.

**5.**     **Questions Raised by Pending Motions**

    There are no motions pending before the Court

**6.**     **Issues of Law, Including Evidentiary Questions, Together with Supporting Authority**

### A.  Plaintiff's Issues of Law

Ms. Coelho anticipates that her proposed jury instructions will have a full recitation of the legal standards to be applied and supporting authority therefore. The following are general issues of law and supporting authority.

1. Was Ms. Coelho subjected to unwelcome sexual harassment – any physical or verbal conduct of a sexual nature which interferes unreasonably with an employee's work performance through the creation of a humiliating or sexually offensive work environment? Muzzy v. Cahillane Motors, Inc., 434 Mass., 409 (2001) ("To establish her claim based on a hostile work environment [M.G.L.A. c. 151B,] (§ 1[18][b]), the plaintiff was required to demonstrate that she worked in a sexually hostile environment that reasonably interfered with her work performance. To sustain that burden, she needed to establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance. This 'objective' reasonable person standard has been interpreted to mean that the evidence is to be considered from the 'view of a reasonable person in the plaintiff's position'." (Quoting Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673, 677–678 n. 3, (1993), quoting Guerre v. MCAD, 402 Mass. 502, 507 (1988).).

2. Was the conduct suffered by Ms. Coelho sufficiently severe and pervasive? Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521 (2001) ("A hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.'" (Quoting College-Town, Div. of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 162 (1987)).

3. Was Ms. Coelho constructively discharged, that is, was she exposed to an "abusive work environment so intolerable that her resignation qualified as a fitting response." Luciano v. Coca-Cola Enterprises, Inc. 307 F.Supp.2d 308 (D. Mass. 2004).

4. Ms. Coelho anticipates that there will be questions of law relating to when Wal-Mart had knowledge or "constructive knowledge" of Mr. Correia's sexual harassment. Ms. Coelho believes that Wal-Mart will contend that, after Ms. Coelho's initial sexual harassment complaint in October of 2003, it had no actual knowledge of his continuing harassment. Ms. Coelho contends that Wal-Mart is constructively charged with such knowledge by her initial complaint, even if Wal-Mart can demonstrate that no supervisory employee had actual knowledge of the continuing harassment. Ms. Coelho also contends that Wal-Mart may be charged with such knowledge upon a showing that 1) other female sales associates complained of Mr. Correia's harassment; 2) Ms. Coelho attempted to file an oral and written sexual harassment complaint with Wal-Mart's personnel manager who was responsible for the adequate training of staff on all sexual harassment issues at Ms. Coelho's store, or; 3) Ms. Coelho attempted to file a complaint with other management level Wal-Mart employees regarding Mr. Correia's behavior but was rebuffed from doing so by Wal-Mart's acts or

omissions. Chapin v. University of Massachusetts at Lowell, 977 F.Supp. 72 (D. Mass. 1997) (Inference of constructive knowledge of sexual harassment arises from evidence that employer was aware of acts of harassment unrelated to plaintiff but failed to take remedial action); Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988) (Failure to act in face of other complaints constitutes condonation of wrongful conduct).

5. Were the steps taken by Wal-Mart after Ms. Coelho's initial complaint reasonably likely to prevent the harassment from recurring? Modern Continental/Obayashi v. Massachusetts Commission Against Discrimination, 445 Mass. 96 (2005) (Remedial action must have been reasonable under the circumstances and designed to prevent a recurrence of harassment against the victim.).

6. Did Wal-Mart illegally retaliate against Ms. Coelho for lodging a sexual harassment complaint? To recover on her claim of retaliation plaintiff must demonstrate (1) that she engaged in protected activity; (2) that Wal-Mart was aware of s. Coelho's protected activity; (3) that Wal-Mart took an adverse action (including constructive discharge) against her; and (4) that a causal connection existed between the adverse action and the protected conduct. Mole v. University of Mass., 442 Mass. 582, 591-92 (2004); Ritchie v. Department of State Police, 60 Mass. App. 655, 664 (2004).

7. To what extent is Wal-Mart, if found liable, required to Make Ms. Coelho whole? Stonehill College v. MCAD, 441 Mass. 549, 570-71 (2004) (The purpose of compensatory damages is to make the plaintiff whole for her loss.). Such remedies may include an award of lost wages, lost benefits, front pay, emotional distress damages, statutory interest, other out-of-pocket costs, and reasonable attorneys' fees. Id. at 571-72; Conway v. Electro-Switch, 402 Mass. 385, 388 (1988) (Damages may be awarded for the "natural and probable consequences" of the illegal conduct and "must be causally related to the defendant's wrongdoing").

8. Did Wal-Mart's actions hinder Ms. Coelho's ability to mitigate her back pay and front pay damages and should such damage award continue? Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368 (1st Cir. 2004) ("[E]mployee who cannot mitigate damages because of the unlawful actions of the employer can still receive back pay.").

9. Was the defendants' illegal conduct malicious, wanton or oppressive or done in reckless disregard of the plaintiff's rights or in callous indifference to the plaintiff so as to warrant an award of punitive damages. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575-585 (1996); Dartt v. Browning-Ferris Indus., Inc., 427 Mass. at 17-17 (1998); Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306 (2003).

    B.    **Defendants Issues of Law**

a.) Did Mr. Correia make sexually inappropriate comments or engage in sexually inappropriate actions in the workplace? *Muzzy v. Cahillane Motors, Inc.*, 434 Mass. 409, 749 N.E.2d 691 (2001); *Prader v. Leading Edge Products, Inc.,* 39 Mass. App. Ct. 616, 619 (1996) (holding a

particular use of words, even profane or offensive, might not constitute sexual harassment); *Morrisoin v. Carleton Woolen Mills, Inc.,* 108 F. ed 429, 441 (1st Cir. 1997)("We accept that many different forms of offensive behavior may be included within the definition of hostile environment sexual harassment…However, the overtones of such behavior must be, at the very least, sex-based, so as to be a recognizable form of sexual harassment.")

b.) Was Mr. Correia's conduct severe and pervasive? *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (finding that few, ambiguous comments, several touches of plaintiff's finger and hand, and one possible poke to plaintiff's buttocks were not sufficiently severe or pervasive to be actionable); *McKenzie v. Illinois Dept. of Trans.*, 92 F.3d 473, 480 (7th Cir. 1996) (finding that three comments over three month period were not frequent or severe enough to rise to level of unreasonably interfering with plaintiff's work environment)*; Lopez v. S.B. Thomas, Inc*., 831 F.2d 1184, 1189 (2d Cir. 1987) (noting even abusive incidents few in number or duration are not actionable).

c.) Did Mr. Correia's conduct unreasonably interfere with Ms. Coelho's work performance and create an abusive environment? *Faragher v. Boca Raton*, 524 U.S. 775, 786, 119 S. Ct. 2275 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752 , 118 S. Ct. 2257 (1998); *Oncale v. Sundower Offshore Servs., Inc.* 523 U.S. 75, 81, 118 S. Ct. 998 (1998).

d.) Was Mr. Correia's conduct sufficiently severe and pervasive, considering the totality of the circumstances, to alter the terms and conditions of the plaintiff's employment? *College-Town. Division of Interco, Inc. v. Mass. Commission Against Discrimination,* 400 Mass. 156, 162 (1987).

e.) Was Mr. Correia's conduct so severe and pervasive as to interfere with a *reasonable* person's work performance? *Muzzy v. Cahillane Motors, Inc.*, 434 Mass. 409, 749 N.E.2d 691 (2001); *Ramsdell v. Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 678-79 (1993); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

f.) Did Defendant know or should they have known that Mr. Correia sexually harassed Ms. Coelho? *College-Town* Division of *Unterco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987).

g.) Did Ms. Coelho engage in protected activity of which Defendant(s) were aware? *McMillan v. Mass. Soc=y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir. 1998); *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662-63, 672 N.E.2d 1 (1996).

h.) Did Ms. Coelho suffer any tangible job action? *Burlington Indus.,* 118 S.Ct. at 2268.

i.) Did Defendant(s) exercise reasonable care to prevent and correct promptly any sexually harassing behavior as soon as they learned about it? *Id.*

j.) Did Ms. Coelho unreasonably fail to take advantage of the opportunity to take advantage of any preventative or corrective opportunities to avoid harm? *Id.*

11

k.) Would a reasonable person in Ms. Coelho's position have found working conditions intolerable and that there was no longer any possibility of rescuing the employment relationship such that s/he would have resigned?  *Rubin v. Household Commercial Financial Services, Inc.*, 51 Mass.App.Ct. 432 (2001); *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5 (1st Cir. 2001)(holding constructive discharge Adescribes harassment so severe and oppressive that staying on the job while seeking redress is intolerable.@); *See also Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 732-33 (1st Cir. 1999); *Nunez-Soto v. Alvarado*, 918 F.2d 1029, 1030-31 (1st Cir. 1990).

l.) Did Ms. Coelho make sufficient efforts to mitigate her damages? Johnson v. Spencer Press of Maine, 364 F.3d 368, 379, 380 (1st Cir. 2004); Quint v. A.E. Staley Mfg. Co., 172 F.3d 1 (1st Cir. 1999)

m.) If Defendant(s') actions were unlawful and Ms. Coelho suffered emotional distress, did that distress arise from circumstances other than the wrongful actions of the Defendant(s) or from a condition existing prior to the Defendant(s') unlawful act?  Stonehill College v. Massachusetts Comm'n Against Discrim., 441, Mass. 549, 808 N.E.2d 205 (2004).

**7.     Any Requested Amendments to the Pleadings**

Plaintiff intends to dismiss her action against the individual defendants.

**8.     Any Additional Matters to Aid in the Disposition of the Action**

**9.     Length of Trial**

The parties agree that this case will be heard by a jury and anticipate the probably length of trial to be five or six half days.

**10.    Witnesses**

    **A.     Ms. Coelho**

1. Rebecca Coelho
   18 Colonial Road, #5
   Milford, MA 01757

2. Chad Gaucher
   3 Hawthorne Drive
   Lakeville, MA

3. Rudi Eckerman
   11164 Skyline Drive
   Brownsboro, TX 75756

4. Warren "Bodie" Moore

      119 Covington Place
      Thomasville, GA 31792

5. Richard L. Souza
   137 Teaticket Highway
   East Falmouth, MA 02536

6. Ginette "Gigi" Haley
   137 Teaticket Highway
   East Falmouth, MA 02536

7. Corey Silva
   9 Meredith Drive
   East Falmouth, MA

8. Ty White
   9 Marr Way
   Mashpee, MA 02649

9. Bruce Varney
   137 Teaticket Highway
   East Falmouth, MA 02536

10. Crystal Gilbert

11. Jason Lunne
    P.O. Box 254
    Falmouth, MA

12. Andrea Duprey
    1 Waumpaunog Drive, #L3
    Mashpee, MA 02649

13. Kathleen Hennessey
    137 Teaticket Highway
    East Falmouth, MA 02536

14. Dave Eckert
    5462D Underhill Street
    Buzzards Bay, MA 02542

     All witnesses are factual witnesses. Ms. Coelho reserves the right to supplement this list prior to trial and in accordance with the law. Ms. Coelho additionally reserves the right to call any witness named by Wal-Mart and to call rebuttal witnesses at the time of trial.

    **B.**    **<u>Wal-Mart Stores, Inc.</u>**

a. Rudy Eckerman
b. Chad Gaucher
c. Crystal Gilbert
d. Ginette Haley
e. Kathleen Hennessey
f. Warren Bodie Moore
g. Richard Souza
h. Ty White
i. Bruce Varney

(Defendants reserve their right to supplement their witness list or call rebuttal witnesses.)

**11. Proposed Exhibits**

### A. Plaintiff's Proposed List

1. Rebecca Coelho CBL Records;
2. Scores from CBLs for Rebecca Coelho;
3. Rudi Eckerman's Daily Record of Events on October 29;
4. Rudi Eckerman's Daily Record of Events on October 30;
5. Rudi Eckerman's Daily Record of Events on October 31;
6. Statement of Kevin Correia dated December 7;
7. Statement of Conversation by Chad Gaucher;
8. Statement of Crystal Gilbert;
9. Statement of Bruce Varney;
10. Statement of Bodie Moore;
11. Statement of Crystal Gilbert #2;
12. Statement of Ginette Haley;
13. Associate Commendation Form for Kevin Correia;
14. Termination Notice for Rebecca Coelho;
15. Letter from Riverview School advising of Ms. Coelho's Math disability;
16. Associate's Commendation Form relocating Ms. Coelho;
17. Affidavit of Corey Silva;
18. Corey Silva CBL training record;
19. Chad Gaucher CBL training record;
20. Jason Lunne CBL training record;
21. Andrea Duprey CBL training record;
22. David Eckert CBL training record;
23. Documents pertaining to CBLs; and
24. Kevin Correia's entire personnel file.

The plaintiff reserves the right to alter or supplement this list as may be necessary prior to trial. The plaintiff also reserves the right to admit documents not listed above for the purposes of rebuttal.

    **B.    Defendants' Proposed List**

a.) List of Computer Based Learning ("CBL") scores for Rebecca Coelho as of December 16, 2003;

b.) Rudy Eckerman's notes written on his Daily Record of Events for October 29, 30 and 31, 2003;

c.) Handwritten Statement of Kevin Correia dated December 7 (no year);

d.) Type-written Statement of Conversation by Chad R. Gaucher (undated);

e.) Type-written Statement of Bodie Moore (undated);

f.) Handwritten Statement of Bruce Varney dated December 8, 2003;

g.) Handwritten Statement of Kathleen Hennessey dated December 12, 2003;

h.) Two handwritten Statements of Crystal Gilbert dated December 11, 2003;

i.) Handwritten Statement of Ginette Haley dated December 11, 2003;

j.) Exit Interview Form dated December 11, 2003;

k.) Handbook Acknowledgement form signed and dated by Rebecca Coelho on July 14, 2003;

l.) New Associate Orientation Checklist signed and dated by Rebecca Coelho on July 14, 2006;

m.) Associate's Commendation Form dated 9/17/03 and signed by R. Coelho, C. Gilbert and G. Haley;

n.) Job Description –Salesfloor Associate signed by R. Coelho dated July 14, 2003;

o.) Open Door Communications Policy, PD-27, revised November 9, 1998;

p.) Wal-Mart Associate Handbook in effect during Plaintiff's employment;

q.) Harassment/Inappropriate Conduct Policy, PD-19, revised February 1, 2000.
    (Defendants reserve their right to supplement their exhibits.)
    The parties have appended hereto their proposed exhibit lists.

| | |
|---|---|
| Respectfully Submitted, | Respectfully Submitted, |
| WAL-MART STORES, INC., CHAD GAUCHER, RUDI ECKERMAN and WARREN "BODIE" MOORE | REBECCA COELHO |
| By their Attorneys: | By her Attorneys: |
| /s/ Marylou Fabbo<br>Marylou Fabbo., Esq., BBO# 566613<br>Amy B. Royal, Esq., BBO# 647175<br>Skoler, Abbot & Presser, P.C.<br>One Monarch Place, Suite 2000<br>Springfield, MA  01144 | /s/ John F. Tocci<br>John F. Tocci, Esq., BBO# 562139<br>Amanda B. Shipley, Esq., BBO#655844<br>Tocci, Goss & Lee, PC<br>35 India Street, 5th Floor<br>Boston, MA  02110 |

Dated:  September 20, 2006