**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REBECCA COELHO,<br><br>        Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 05-10703-RWZ<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT

1. In this action, the plaintiff Rebecca Coelho ("Ms. Coelho" or the "Plaintiff") a former Sales Associate for Wal-Mart Stores, Inc. ("Wal-Mart" or the "Defendant") seeks damages for illegal discriminatory actions by Wal-Mart. Specifically, the Defendant, through its employees and agents engaged in activities constituting illegal sexual harassment of Ms. Coelho and/or illegal retaliation against Ms. Coelho for complaining about the illegal sexual harassment she suffered at Wal-Mart.

## THE PARTIES

2. Rebecca Coelho is an adult Massachusetts resident who resides in Pocasset, Barnstable County, Massachusetts.

3. Wal-Mart Stores, Inc. is an Arkansas corporation headquartered at 702 S.W. 8th Street Bentonville, AR 72716-0215. Wal-Mart Stores, Inc. has stores located throughout Massachusetts and the United States including store #3561 located at 137 Teaticket Highway East Falmouth, Barnstable County, Massachusetts 02536.

## THE FACTS

4. Ms. Coelho commenced her Wal-Mart employment on or about August 14, 2003.

5. Ms. Coelho did not receive any specific instruction or training regarding workplace harassment other then a short computer-based general training session during her Wal-Mart orientation. Ms. Coelho was never provided with a copy of Wal-Mart's sexual harassment policy, if any such policy existed.

6. In September 2003, a young Sales Associate named Kevin Correia ("Mr. Correia") embarked on a disturbing campaign of sexual misconduct toward Ms. Coelho.

7. Mr. Correia often stalked Ms. Coelho around the store; interrupting her while she attempted to perform her duties in order to make known his romantic desires.

8. Mr. Correia also often called out to Ms. Coelho in a loud, intrusive manner and made inappropriate comments of a sexual nature to Ms. Coelho.

9. Mr. Correia constantly professed his affection for Ms. Coelho.

10. Mr. Correia's comments were occasionally made within earshot of customers and other Wal-Mart employees.

11. Mr. Correia also frequently attempted to hug Ms. Coelho and would block her pathway unless she provided him with a hug.

12. Ms. Coelho attempted to deflect this inappropriate conduct by informing Mr. Correia that his conduct made her uncomfortable, as she was "not a hugging person."

13. She also informed Mr. Correia that his pursuit of her and comments toward and/or about her were unwelcome.

14. Despite the rebuke, Mr. Correia's behavior became more persistent.

15. Mr. Correia began to pursue Ms. Coelho about the store requesting that she go on dates with him.

16. Mr. Correia frequently made inappropriate comments to Ms. Coelho including: "Becky, your ass has gotten chunky, you need to lose weight;" "Becky, I know you are wearing a thong (underwear);" "I need to declare my undying love for you."

17. Mr. Correia, on one occasion, informed several Wal-Mart customers that he intended to marry Ms. Coelho.

18. Ms. Coelho responded by informing Mr. Correia that his behavior was inappropriate and unacceptable.

19. Ms. Coelho also informed Mr. Correia that, as a married woman, she found his behavior particularly egregious.

20. In late October, Ms. Coelho informed Wal-Mart's District Manager, Rudi Eckerman, that Mr. Correia was "aggressively pursuing" her both physically and verbally.

21. Mr. Eckerman informed Ms. Coelho that he would meet with Mr. Correia and "take care of" the situation.

22. That same day, Ms. Coelho also registered complaints regarding Mr. Correia's inappropriate behavior with two other supervisors, Assistant Store Manager Chad Gaucher and Ms. Coelho's direct supervisor, Store Manager Warren "Bodie" Moore.

23. Additionally, Ms. Coelho attempted to file a written complaint with the Manager of Human Resources, but was told she should not and, in fact, could not do so and thereafter was turned away.

24. Shortly after Ms. Coelho registered her complaint, the Defendants transferred Ms. Coelho to a different department but allowed Mr. Correia to remain in his position and department. Wal-Mart's transfer of Ms. Coelho was against her wishes.

25. Despite the transfer and Mr. Eckerman's assurances that he would "take care" of the situation, Mr. Correia's inappropriate behavior of a sexual nature continued unabated. At one point, Mr. Correia informed Ms. Coelho that Mr. Eckerman had informed him that he was free to try to hug Ms. Coelho if it was welcome.

26. Ms. Coelho informed Mr. Correia that his behavior was most unwelcome.

27. In early December 2003 Mr. Correia followed Ms. Coelho into a break area where she was eating dinner with a co-worker.

28. Mr. Correia sat across a table from Ms. Coelho, interrupted Ms. Coelho's conversation and informed her "how compatible" he and she were. He then attempted to hold hands with her from across the table.

29. Ms. Coelho pulled her hands away and informed Mr. Correia that he was both mistaken and confused.

30. Ms. Coelho immediately rebuked Mr. Correia for making inappropriate comments to which Mr. Correia responded, in front of several co-workers, "I thought we had a more open relationship."

31. Ms. Coelho informed Mr. Correia that they had no relationship and that he was scaring her with his inappropriate comments and actions. She specifically told him that he "needed to stop talking like that." Ms. Coelho who was quite shaken left the area.

32. Mr. Correia remarked to a co-worker that he "would always love" Ms. Coelho no matter how rude she was to him.

33. Immediately after this incident Ms. Coelho informed the Assistant Store Manager, Chad Gaucher of Mr. Correia's inappropriate behavior.

34. Ms. Coelho was visibly upset as she detailed to Mr. Gaucher, Mr. Correia's inappropriate conduct and comments. She insisted that something be done. Mr. Gaucher stated that he would meet with Mr. Correia and he dismissed Ms. Coelho.

35. Just before Ms. Coelho was to leave for the day, the Store Manager, Warren "Bodie" Moore informed her that he spoke with Mr. Correia, who denied any inappropriate conduct or comments, and that he believed Mr. Correia.

36. Mr. Moore stated that the latest episode seemed to be little more than an argument between two co-workers, for which he blamed Ms. Coelho.

37. Ms. Coelho was simply stunned by Mr. Moore's dismissal of her concerns and her distress.

38. She gathered herself and told Mr. Moore that this was not about a single incident but about a history of inappropriate conduct, which had risen to a frightening level. She informed Mr. Moore that Mr. Correia, seemingly jealous of Ms. Coelho's friendship with a male co-worker, had tried to push that co-worker down the stairs.

39. Mr. Moore became irate and again blamed Ms. Coelho for Mr. Correia's actions.

40. Ms. Coelho informed Mr. Moore that she wished to make a formal written complaint about Mr. Correia's actions.

41. Mr. Moore refused to allow Ms. Coelho to file a written complaint. He stated that "there was nothing to write about and you'd better stop."

42. Shortly thereafter, on December 11, 2003 Ms. Coelho asked to speak privately with her department manager Crystal Gilbert who, instead, turned Ms. Coelho away and avoided Ms. Coelho for the remainder of the shift.

43. At approximately 2:00 p.m. on December 11, 2003 Mr. Moore paged Ms. Coelho to come to his office. When Ms. Coelho arrived, Ms. Gilbert and an Assistant Store Manager were in the office. At this meeting Mr. Moore raised non-existent performance issues and focused on "issues" with Ms. Coelho's "attitude" rather than on Mr. Correia's abhorrent behavior.

44. Ms. Coelho protested, insisting that the focus of the meeting be Mr. Correia's inappropriate behavior.

45. At this point, Mr. Moore made a shockingly callous remark stating, "I think you have been leading [Mr. Correia] on."

46. Ms. Coelho became extremely upset and again recited the litany of inappropriate conduct by Mr. Correia towards her. She insisted that she simply could not tolerate this behavior any longer and that she needed the behavior to stop. She complained that, when she raised these issues with Mr. Gaucher, Mr. Gaucher had also tried to blame her.

47. At this point Mr. Moore became agitated. He raised his voice and defended Mr. Gaucher and Mr. Correia, insisting that Ms. Coelho "take half the blame."

48. Confused, Ms. Coelho asked for what exactly she needed to take the blame, to which Mr. Moore replied, "for misleading [Mr. Correia]."

49. Mr. Moore then began to interrogate an upset and bewildered Ms. Coelho asking her if she had ever gone out with Mr. Correia for coffee, to the mall or to dinner.

6

50. The turn in the conversation caused Ms. Coelho to become nauseous and she informed Mr. Moore that she had never gone out with Mr. Correia, reminding Mr. Moore that she was married and had a young daughter at home.

51. Mr. Moore vigorously pursued Ms. Coelho, despite her obvious distress. Mr. Moore accused her of having a romantic relationship with another co-worker.

52. Mr. Moore then threatened that, "if [he] heard of any more problems concerning [Ms. Coelho], or from [Ms. Coelho]," he would fire her.

53. As Ms. Coelho attempted to defend herself from Mr. Moore's irrational attack one more time, Mr. Moore glared at Ms. Coelho and stated that he did not want to hear anything more from her.

54. Ms. Coelho, now shaking and crying, took off her Wal-Mart badge and told him that she could not take the abuse anymore. She stood up, opened the door and said, "I quit!"

55. Ms. Coelho then reported to Human Resources where she indicated that she wished to speak with Mr. Eckerman regarding her treatment.

56. Upon being informed that Mr. Eckerman was unavailable, Ms. Coelho left her telephone number and requested that he call her. Neither Mr. Eckerman, nor any other Wal-Mart manager, contacted Ms. Coelho after December 11, 2003.

57. In the wake of Wal-Mart's mistreatment, Ms. Coelho suffered, and continues to suffer, severe emotional distress.

58. Ms. Coelho has experienced nightmares and panic attacks.

59. She has been hampered in her search for employment by her mental state.

60. She has, at times, been unable to care for her child and has, instead, relied upon other family members for assistance.

61. On or about June 9, 2004 Ms. Coelho filed a sexual harassment and retaliation claim against the Defendants with the Massachusetts Commission Against Discrimination ("MCAD"). A true and accurate copy of the complaint is attached hereto as <u>Exhibit 1</u>.

62. Ms. Coelho removed her Charge of Discrimination from the MCAD in order to pursue this action.

## **COUNT I**
**(Discrimination)**

63. Plaintiff realleges and incorporates by reference paragraphs 1 through 62 of the Complaint.

64. Ms. Coelho has timely satisfied all statutory prerequisites to filing this suit pursuant to M.G.L. c. 151B and Title VII of the Civil Rights Act of 1965.

65. Wal-Mart Stores Inc. subjected Ms. Coelho to sexual harassment in violation of M.G.L. c. 151B and Title VII of the Civil Rights Act of 1965.

66. As a result of the Defendant's discriminatory acts, Ms. Coelho has suffered lost income and benefits; and has suffered other losses, including but not limited to, severe emotional distress.

## **COUNT II**
**(Retaliation)**

67. Plaintiff realleges and incorporates by reference paragraphs 1 through 66 of the Complaint.

68. Ms. Coelho has timely satisfied all statutory prerequisites to filing this suit pursuant to M.G.L. c. 151B and Title VII of the Civil Rights Act of 1965.

69. Wal-Mart Stores, Inc. subjected Ms. Coelho to sexual harassment in violation of M.G.L. c. 151B and Title VII of the Civil Rights Act of 1965 and retaliated against Ms. Coelho for exercising her rights in seeking redress for her co-worker's harassing behavior.

70. As a result of the Defendant's discriminatory acts, Ms. Coelho has suffered lost income and benefits; and has suffered other losses, including but not limited to severe emotional distress.

**WHEREFORE,** the Plaintiff, Rebecca Coelho, prays that this Court:

(a) Enter judgment against the Defendant, Wal-Mart Stores, Inc., and in favor of the Plaintiff, Rebecca Coelho on Count I of this Complaint awarding her damages including, but not limited to, lost income and benefits, medical expenses, emotional distress damages, punitive damages and her reasonable attorneys fees and costs of litigation;

(b) Enter judgment against the Defendant, Wal-Mart Stores, Inc., and in favor of the Plaintiff, Rebecca Coelho on Count II of this Complaint awarding her damages including, but not limited to, lost income and benefits, medical expenses, emotional distress damages, punitive damages and her reasonable attorneys fees and costs of litigation;

(c) Award the Plaintiff punitive damages.

(d) Award the Plaintiff her costs, expenses and attorney's fees;

(f) Grant such other and further relief as appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE**

        Respectfully Submitted,

        REBECCA COELHO

        By her attorney,


           /S/ John F. Tocci
        John F. Tocci, Esq. BBO# 562139
        Tocci, Goss & Lee, PC
        35 India Street, 5th Floor
        Boston, MA 02110
        (617) 542-6200

Dated: September 29, 2006